**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TERRY HARTMAN** | **CIVIL ACTION** |
| **versus** | **NO. 11-13** |
| **MAJOR JOHNSON** | **SECTION: "B" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE** as untimely.

Petitioner, Terry Hartman, is a state prisoner incarcerated at the Madison Parish Correctional Center, Tallulah, Louisiana. On May 24, 1991, he pleaded guilty to two counts of forcible rape under Louisiana law.[1] On September 10, 1991, he was sentenced on each count to a

[1] State Rec., Vol. I of VI, transcript of May 24, 1991; State Rec., Vol. I of VI, minute entry of May 24, 1991.

concurrent term of thirty years imprisonment, with the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence.[2]

Over the next two decades, petitioner repeatedly sought relief from those convictions and sentences in the state courts, as follows:

- On May 23, 1994, he filed with the state district court a motion for reconsideration of sentence,[3] which was denied on May 31, 1994.[4]

- On July 5, 1994, he filed with the state district court a motion to correct an illegal sentence,[5] which was denied on August 3, 1994.[6]

---

[2] State Rec., Vol. I of VI, transcript of September 10, 1991; State Rec., Vol. I of VI, minute entry of September 10, 1991; State Rec., Vol. I of VI, Sentence dated October 7, 1991.

[3] State Rec., Vol. II of VI. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document, the Court will look to the post-mark or other evidence, if available, or, as a last resort, the date stamp placed on the document by the clerk of court. While these assumptions are somewhat imprecise, approximate filing dates are sufficient here because petitioner's federal application is untimely by more than a decade.

[4] State Rec., Vol. II of VI, Order dated May 31, 1994.

[5] State Rec., Vol. II of VI.

[6] State Rec., Vol. II of VI, Judgment and Reasons for Judgment dated August 3, 1994.

- On September 1, 1995, he wrote a letter to the state district court asking that his plea agreement be enforced.[7] That request was denied on September 6, 1995.[8]

- On June 17, 1996, he filed with the state district court an application for post-conviction relief,[9] which was denied on March 4, 1997.[10] It is noted that the state court record contains two unexplained orders from the Louisiana First Circuit Court of Appeal dated October 31, 1997,[11] and April 13, 1998.[12] It is unclear whether those rulings relate to this post-conviction application; however, out of an abundance of caution, this Court will assume that they do.

---

[7] State Rec., Vol. II of VI.

[8] State Rec., Vol. II of VI, Order dated September 6, 1995.

[9] State Rec., Vol. II of VI.

[10] State Rec., Vol. III of VI, Order dated March 4, 1997. On April 29, 1997, petitioner also filed a petition for a writ of mandamus with the Louisiana First Circuit Court of Appeal, claiming that the district court had not ruled on his post-conviction application. State Rec., Vol. III of VI. In light of the district court's ruling, that petition was denied on May 29, 1997. State *ex rel.* Hartman v. State, No. 97 KW 0974 (La. App. 1st Cir. May, 29, 1997); State Rec., Vol. III of VI.

[11] State *ex rel.* Hartman v. State, No. 97 KW 2141 (La. App. 1st Cir. Oct. 31, 1997); State Rec., Vol. III of VI.

[12] State *ex rel.* Hartman v. State, No. 98 KW 0237 (La. App. 1st Cir. Apr. 13, 1998); State Rec., Vol. III of VI.

- On April 24, 1998, he filed with the state district court another application for post-conviction relief,[13] which was denied on May 29, 1998.[14] Again, this Court notes that the state court record contains an unexplained order from the Louisiana First Circuit Court of Appeal dated September 11, 1998,[15] and the state, in its response in this federal proceeding, references yet another unexplained decision of that court denying relief on November 5, 1998.[16] While it is unclear whether those rulings relate to this post-conviction application, this Court, out of an abundance of caution, will assume that they do.

- On January 12, 1999, he filed with the state district court an application for a writ of *habeas corpus*,[17] which was later dismissed at his request on April 22, 1999.[18]

---

[13] State Rec., Vol. III of VI.

[14] State Rec., Vol. III of VI, Order dated May 29, 1998.

[15] State *ex rel.* Hartman v. State, No. 98 KW 1751 (La. App. 1st Cir. Sept. 11, 1998); State Rec., Vol. III of VI.

[16] Rec. Doc. 15, p. 5.

[17] State Rec., Vol. II of VI.

[18] State Rec., Vol. III of VI, Order dated April 22, 1999.

- On October 29, 1999, he filed with the state district court another motion to correct an illegal sentence,[19] which was denied on November 4, 1999.[20] He then filed a motion for reconsideration,[21] which was likewise denied on December 23, 1999.[22] His related writ applications were then also denied by the Louisiana First Circuit Court of Appeal on May 4, 2000,[23] and the Louisiana Supreme Court on March 16, 2001.[24]

- On June 5, 2001, he filed with the state district court a motion to amend or modify sentence,[25] which was denied June 21, 2001.[26] He then filed a motion for reconsideration,[27] which was likewise denied on July 24, 2001.[28]

---

[19] State Rec., Vol. IV of VI.

[20] State Rec., Vol. VI of VI, Judgment and Reasons for Judgment dated November 4, 1999.

[21] State Rec., Vol. IV of VI.

[22] State Rec., Vol. IV of VI, Order dated December 23, 1999.

[23] State *ex rel.* Hartman v. State, No. 00 KW 0401 (La. App. 1st Cir. May 4, 2000); State Rec., Vol. VI of VI.

[24] State *ex rel.* Hartman v. State, 787 So.2d 308 (La. 2001) (No. 2000-KH-1871); State Rec., Vol. VI of VI.

[25] State Rec., Vol. IV of IV.

[26] State Rec., Vol. IV of VI, Judgment and Reasons for Judgment dated June 21, 2001.

[27] State Rec., Vol. IV of VI.

[28] State Rec., Vol. IV of VI, Order dated July 24, 2001.

- On January 8, 2002, he filed with the state district court a motion to correct an invalid sentence,[29] which was denied on February 15, 2002.[30] He then filed a motion for reconsideration,[31] which was likewise denied on April 4, 2002.[32]

- On July 17, 2008, he filed with the state district court a "Motion to Correct a Breach of Promise,"[33] which was denied on January 23, 2009.[34] He filed a motion for reconsideration,[35] which was likewise denied on March 24, 2009.[36] His related writ applications were then also denied by the Louisiana First Circuit Court of Appeal on August 31, 2009,[37] and the Louisiana Supreme Court on October 15, 2010.[38]

---

[29] State Rec., Vol. IV of VI.

[30] State Rec., Vol. IV of VI, Judgment and Reasons for Judgment dated February 15, 2002.

[31] State Rec., Vol. IV of VI.

[32] State Rec., Vol. IV of VI, Judgment and Reasons for Judgment dated April 4, 2002.

[33] State Rec., Vol. VI of VI.

[34] State Rec., Vol. IV of VI, Judgment and Reasons for Judgment dated January 23, 2009.

[35] State Rec., Vol. IV of VI.

[36] State Rec., Vol. IV of VI, Order dated March 24, 2009.

[37] State v. Hartman, No. 2009 KW 0999 (La. App. 1st Cir. Aug. 31, 2009); State Rec., Vol. V of VI.

[38] State *ex rel.* Hartman v. State, 46 So.3d 1281 (La. 2010) (No. 2009-KH-2386); State Rec., Vol. V of VI.

On November 9, 2010, petitioner filed the instant federal application for *habeas corpus* relief.[39] The state contends that petitioner's federal application is untimely.[40] The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications. The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[39] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner placed his application in the prison mailing system on November 9, 2010. Rec. Doc. 1, p. 15.

[40] Rec. Doc. 15.

Clearly, Subsections B and C are inapplicable in the instant case, in that petitioner does not claim either the existence of a state-created impediment to filing or a newly-discovered constitutional right.

Petitioner perhaps means to invoke Subsection D by basing his claim on the Louisiana Legislature's enactment of Act 388 in 1992, which subjected him to the new registration requirements for certain sex offenders.[41] However, regardless of whether Subsection D applies, or whether petitioner's case is controlled by Subsection A, the only remaining subsection, the result is the same. Because both the enactment of Act 388 and the date on which petitioner's convictions and sentences became final occurred many years prior to the enactment of the AEDPA, a jurisprudentially created "grace period" applies, and petitioner's one-year federal statute of limitations therefore began to run in either event on the AEDPA's effective date, April 24, 1996. Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998). Accordingly, he had until April 24, 1997, to file a federal application for *habeas corpus* relief, unless that deadline was extended through tolling. See, e.g., Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769 (5th Cir. 2004) (holding that one-year "grace period" is subject to tolling).

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-

---

[41] The Court notes that petitioner repeatedly references some unspecified legislative act or other action which allegedly occurred on December 18, 2007. See, e.g., Rec. Doc. 1, p. 14; Rec. Doc. 1-1, p. 2; Rec. Doc. 16, pp. 3 and 6. It unclear to what petitioner is referring. In any event, petitioner was made subject to the sex offender requirements at the time of the law's original enactment in 1992. Therefore, the "factual predicate" of his claim could have been discovered through the exercise of due diligence at the time of enactment in 1992.

conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).[42]

After fifty-three (53) days elapsed, petitioner arguably tolled the federal limitations period on June 17, 1996, by filing a post-conviction application with the state district court.[43] Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette, 372 F.3d at 769-71.  Because this Court has assumed for the purposes of this decision that the Court of Appeal's denial of April 13, 1998, is related to that post-conviction application, the Court will further assume that the limitations period therefore remained tolled until May 13, 1998, when petitioner's period expired for seeking review of that denial by the Louisiana Supreme Court.[44]  Id. (a state application ceases to be pending, and tolling therefore ends, when the time for seeking appellate review expires).

---

[42] In the chronology recounted earlier in this opinion, the Court did not include the various motions petitioner filed over years seeking documents.  Such requests for documents cannot fairly be considered applications for state post-conviction relief or other collateral review for tolling purposes.  Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).  Therefore, those filings are irrelevant in this federal proceeding.

[43] In its response, the state argues that this application was untimely and, therefore, not properly filed for the purposes of § 2244(d)(2).  See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).  However, the state court did not deny the application on that basis, and, in any event, petitioner's federal application is untimely by many years even if he is given tolling credit for the filing.  Accordingly, out of an abundance of caution, the Court will simply assume for the purposes of this decision that tolling is warranted based on the filing.

[44] Under Louisiana law, a litigant has thirty days to seek review of a judgment of a court of appeal.  Louisiana Supreme Court Rule X, § 5(a).

Moreover, the Court will assume that the limitations period did not resume running at that point, because petitioner had arguably already tolled the limitations period again by filing another post-conviction application on April 24, 1998. Because the Court has likewise assumed for the purposes of this decision that the Court of Appeal's denial of November 5, 1998, is related to that post-conviction application, the Court will further assume that the limitations period therefore remained tolled until December 7, 1998, when petitioner's period expired for seeking review of that denial by the Louisiana Supreme Court.[45]

When the limitations period finally resumed running at that point, petitioner had three hundred twelve (312) days of the limitations period remaining. After thirty-five (35) of those days elapsed, he arguably again tolled the federal limitations period on January 12, 1999, by filing his state application for a writ of *habeas corpus*. As noted, that application was later dismissed at his request on April 22, 1999. At the very latest, tolling then ended on May 24, 1999, when his thirty-day period expired for seeking review by the Louisiana First Circuit Court of Appeal.[46]

---

[45] Because the thirtieth day for seeking review fell on a Saturday, the period was extended through the following Monday, December 7, 1999. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

The Court notes that petitioner may not be entitled to any tolling whatsoever for this application. In the instant case, the state district court denied the application as untimely. State Rec., Vol. III of VI, Order dated May 29, 1998. However, this Court cannot locate in the state court record a copy the Court of Appeal's ruling from November 5, 1998. Being unable to verify that the Court of Appeal likewise found the application untimely, tolling will be granted out of an abundance of caution.

[46] Under Louisiana law, a litigant has thirty days to seek review by a court of appeal. Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404 (5th Cir. 2001). Because the thirtieth day for seeking review fell again on a Saturday, the period was extended through the following Monday, May 24, 1999.

The Court notes that it is unclear whether petitioner should in fact be given credit for the thirty-day period for seeking supervisory review in light of the fact that *he* requested the dismissal in

When the limitations period again resumed running, petitioner had two hundred seventy-seven (277) days remaining. Therefore, he had only until February 25, 2000, either to again toll the limitations period or to file his federal application.

The record reflects that the only state application pending during that period was the motion to correct an illegal sentence filed on October 29, 1999. However, it is clear that Louisiana Supreme Court ultimately denied that motion as *untimely*, as indicated by that court's citations to La.C.Cr.P. article 930.8 and State *ex rel.* Glover v. State, 660 So.2d 1189 (La. 1995).[47] The United States Supreme Court has conclusively held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it cannot be considered "properly filed" so as to entitle the petitioner to statutory tolling. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). Simply put: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Id. at 414 (internal quotation marks and brackets omitted). Because the Louisiana Supreme Court expressly rejected petitioner's motion to correct an illegal sentence as untimely, he cannot receive any statutory tolling credit for that filing.[48]

---

district court. Cf. Dusenbery v. McMoRan Exploration Co., 425 So.2d 249, 251 (La. App. 1st Cir. 1982) (holding that, under Louisiana law, a litigant in a *civil* case had no right to appeal if he acquiesced in the dismissal). However, out of an abundance of caution and because his federal application is untimely in any event, the Court will toll that period. Cf. Mark v. Thaler, No. 09-50672, 2011 WL 2627896 (5th Cir. July 6, 2011) (holding that a petitioner's state conviction was not final for AEDPA purposes until after the period for seeking direct review of a voluntarily dismissed appeal because Texas law did not expressly prohibit him from seeking such review).

[47] Article 930.8 sets forth the limitations period for filing applications for post-conviction relief, while the Glover decision held that an appellate court is not precluded from denying relief on basis of article 930.8 even if the lower court did not consider timeliness.

[48] Moreover, even if petitioner were in fact granted tolling for that application, the result here would not change. In fact, even if petitioner were granted tolling credit for *every* state application

Because petitioner had no other properly-filed applications for state post-conviction relief or other collateral review pending at any time prior to February 25, 2000, he clearly is not entitled to further statutory tolling.[49]

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Because petitioner is entitled to neither further statutory tolling nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before February 25, 2000, in

---

he filed over the years, his federal application would still be untimely because he had no applications for state post-conviction relief or other collateral review pending *at any time* during the years of 2003-2007. That untolled period alone would make his federal application untimely by many years.

[49] The Court also notes that petitioner filed several state applications after that date. However, applications filed after the expiration of the federal statute of limitations have no bearing on the timeliness of a *habeas* petitioner's federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).


order to be timely. His federal application was not filed until November 9, 2010, and it is therefore untimely.

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Terry Hartman be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[50]

New Orleans, Louisiana, this sixteenth day of August, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

[50] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.